UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KARUNA MANOTHAM,<br><br>Petitioner,<br><br>v.<br><br>BRUCE SCOTT,<br><br>Respondent. | CASE NO. 2:26-cv-02993-DGE<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Before the Court is Petitioner's petition for writ of habeas corpus. (Dkt. No. 1.) For the following reasons, the Court GRANTS the petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Petitioner was born in a refugee camp in Thailand in 1981 after his parents fled Laos following the Vietnam War. (Dkt. Nos. 1 at 1; 2 at 1.) Petitioner and his family entered the United States as refugees, and he was admitted as a lawful permanent resident in 1983 when he was less than two-years-old. (*Id.*)

To Petitioner's knowledge, he is neither a citizen or national of Laos nor Thailand. (*Id.*) Respondents disagree, stating Petitioner is a native of Thailand and citizen of Laos. (Dkt. Nos. 9 at 2; 10-1 at 2; 10-2 at 2.)

On November 30, 2009, Petitioner was convicted of Felon in Possession of Firearm, in violation of 18 U.S.C. § 922, and sentenced to thirty-seven months in prison. (Dkt. Nos. 8 at 4; 9 at 2; 10-1 at 3.) Petitioner was taken directly from federal criminal custody to immigration custody on October 21, 2011. (*Id.* at 5.) An Immigration Judge ("IJ") ordered Petitioner removed to Laos on December 7, 2011. (Dkt. Nos. 1 at 2; 8 at 5; 10-3 at 2.) At the time, Immigration and Customs Enforcement ("ICE") was unable to secure a travel document to remove Petitioner to Laos. (Dkt. No. 9 at 3.) ICE detained Petitioner until he was released under an Order of Supervision on March 6, 2012. (Dkt. Nos. 8 at 7; 10-4.)

Petitioner states he complied with the conditions of his supervised release for over fourteen years. (Dkt. No. 12 at 1.)[1] He maintained stable employment, provided financial and practical support to his elderly mother, younger sister, and fiancée, and developed substantial family and community ties. (*Id.*)

On July 13, 2026, Petitioner appeared for a check-in with ICE in Portland, Oregon. (Dkt. Nos. 1 at 4; 2 at 2; 8 at 5; 9 at 3.) During the check-in, ICE revoked Petitioner's supervised release, took him into custody, and informed him he would be transported to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. (Dkt. No. 1 at 4.) Petitioner states he was not provided with written notice that his supervised release would be revoked. (Dkt. Nos. 1 at 4; 11 at 1, 4; 12 at 3.) Respondents disagree. (Dkt. Nos. 8 at 5; 9 at 3; 10-5.) Respondents

[1] Respondents state they issued a letter directing Petitioner to report on July 9, 2026, which he did not do. (Dkt. No. 9 at 3.) Petitioner states he never received this notice and did not knowingly fail to report on that date. (Dkt. No. 11 at 3.) The record does not contain this letter.

provided the "Notice of Revocation of Release" which states Petitioner's release has been revoked pursuant to 8 C.F.R. § 241.13(i), because "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future" as "ICE has obtained a travel document and scheduled [Petitioner's] removal to take place no later than August 16, 2026." (Dkt. No. 10-5 at 2–3.) An ICE officer certified they served Petitioner with the document on July 13, 2026, and there appears a signature next to "Detainee Signature." (*Id.* at 3–4.) Petitioner states he did not sign this document. (Dkt. No. 11 at 6.)

Petitioner agrees ICE notified him they had received travel documents but disputes having the opportunity to read or examine the document. (Dkt. Nos. 11 at 1, 4; 12 at 2.) Respondents state they received the travel document from the Laotian government on May 27, 2026. (Dkt. No. 9 at 3.)

Petitioner states he was not provided with an interview in which he could respond to the reasons for revocation, oppose returning to custody, or express fear of removal to Laos on July 13, 2026. (Dkt. Nos. 2 at 2; 11 at 1, 4; 12 at 2–3.) Respondents again disagree, stating petitioner was provided an informal interview at the time of his arrest. (Dkt. Nos. 8 at 2, 5; 9 at 3; 10-5 at 5.) Respondents attached a document signed by Deportation Officer "S. Smith" stating on July 13, 2026 he conducted an initial informal interview and Petitioner declined to respond, did not provide a written statement, and did not provide any written documents. (Dkt. No. 10-5 at 5.) Petitioner denies declining an interview and denies signing the acknowledgement attributed to him. (Dkt. Nos. 11 at 4, 6; 12 at 3.)

Petitioner is pursuing a claim of potential derivative citizenship through his father. (Dkt. Nos. 1 at 1–3; 11 at 14.) Petitioner's petition for review ("PFR") to the Ninth Circuit is pending. (Dkt. No. 11 at 13.) Respondents state they began to effectuate staging to proceed with

Petitioner's removal but then received the stay of removal accompanying his PFR on July 23, 2026. (Dkt. Nos. 8 at 6; 9 at 4.) Respondents state, "but for the stay of removal, Petitioner would have been removed from the United States to Laos." (Dkt. No. 9 at 4.) Petitioner expresses fear of being removed to Laos. (Dkt. No. 2 at 2.)

**B. Procedural Background**

Petitioner, proceeding pro se, filed a writ for habeas corpus on August 25, 2026. (Dkt. No. 1.) That same day, Petitioner filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction. (Dkt. No. 3.) This Court denied Petitioner's Emergency Motion for a Temporary Restraining Order as moot as petitioner did not allege his removal was imminent. (Dkt. No. 7 at 2.) Respondents filed a response to Petitioner's habeas petition on September 8, 2026. (Dkt. No. 8.) Petitioner filed a reply on September 15, 2026. (Dkt. No. 11.) The Court entered a minute order requiring Respondents to verify whether the travel document obtained on May 27, 2026 for Petitioner to Laos remained valid. (Dkt. No. 13.) On October 9, 2026, Respondents confirmed this travel document is now expired. (Dkt. No. 14.)

## II. ANALYSIS

**A. Legal Standard**

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that

he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

**B. Petitioner's Re-Detention Did Not Violate Due Process**

Petitioner argues his detention is unlawful because Respondents violated his due process rights by failing to follow their own regulations requiring notice and an informal interview with the opportunity to respond prior to revocation of his supervised release.

The Due Process Clause protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings. U.S. Const. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). *Mathews* employs a three-factor test looking at (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest." *Mathews*, 424 U.S. at 335.

The parties agree *Mathews* provides the appropriate framework to assess the process provided by the government in re-detaining Petitioner, and whether it complied with due process, but reach opposite conclusions.

1. Private interest

The first *Mathews* factor considers "the private interest that will be affected by the official action." *Id.* Courts have continually recognized an immigration detainee's private interest in freedom from imprisonment. *See Hamdi*, 542 U.S. at 529 (finding freedom from detention "the most elemental" of private interests); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025).

Here, Petitioner has a significant private interest in freedom from detention that has been somewhat reduced by the valid travel document to Laos. On one hand, Petitioner has a strong private interest accumulated from his release from detention and time spent in the community since March 2012. Upon his release, Petitioner "took with him a liberty interest which is entitled to the full protections of the [D]ue [P]rocess [C]lause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025); *Makuey*, 2025 WL 3640900, at *4. "[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe*, 787 F. Supp. 3d at 1093. On the other hand, private liberty interests are reduced after a travel document has been issued for individuals subject to a final order of removal. *Saechao v. Scott*, Case No. 2:26-cv-00548-TMC, 2026 WL 626765, at * 3 (W.D. Wash. Mar. 5, 2026); *Lee v. Scott*, Case No. C26-2179-MLP, 2026 WL 2186139, at * 5 (W.D. Wash. July 29, 2026).

On balance, Petitioner has a significant private interest in his continued liberty that was somewhat reduced by the issued travel document.

2. Risk of erroneous deprivation of interest through procedures used

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335. Here, the risk of erroneous deprivation is not substantial because the travel document to Laos was issued prior to Petitioner's re-detention and Petitioner has been subject to a removal order since December 2011.

This Court recognizes the factual dispute between the parties regarding whether Respondents complied with the regulations revoking release of noncitizens subject to a removal order (8 C.F.R. §§ 241.4(l), 241.13(i)). These provisions are "intended to provide due process protections to noncitizens following the removal period as they are considered for continued detention, release, and then possible revocation of release." *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1163 (S.D. Cal. 2025) (citation modified). However, here, Petitioner does not adequately identify how compliance with these regulations or additional procedures could change the existence of the valid travel document and that Petitioner was subject to a final order of removal. At that time, no additional process[2] would have impeded Respondents' ability to detain Petitioner and effectuate removal. *See Lee*, 2026 WL 2186139 at *6. This Court does not find probable value of providing additional procedural safeguards in this case.

[2] Petitioner argues had he been provided an opportunity to respond, he could have explained his personal circumstances and that "his immigration record already documented a long standing fear concerning removal to Laos." (Dkt. No. 11 at 9.) But this information would not have invalidated the travel document or his removal order.

3. <u>Government's interest</u>

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. Respondents' interest in detaining Petitioner was significant because of the final order of removal and the travel document to Laos which was then valid.

Weighing the *Mathews* factors, the Court concludes Petitioner's re-detention on July 13, 2026 did not violate due process.

**C. Petitioner's Ongoing Detention Does Violate Due Process; There Is No Likelihood of Removal in the Reasonably Foreseeable Future**

Since Petitioner's July 2026 re-detention, circumstances have changed in two ways that impact the Court's analysis under *Mathews*. Respondents previously sought to remove Petitioner "no later than August 16, 2026." (Dkt. No. 9 at 3.) However, the travel document upon which Respondents were relying on to remove Petitioner has now expired. (Dkt. No. 14 at 1.) There is no indication Respondents have secured a new one. Moreover, enforcement of Petitioner's removal order is presently stayed due to Petitioner's pending PFR. Respondents state, "but for the stay of removal, Petitioner would have been removed from the United States to Laos." (Dkt. No. 9 at 4). Given these new facts, the Court finds Petitioner's ongoing detention does constitute a due process violation.

The Supreme Court has held "the Due Process Clause protects a[ ] [noncitizen] subject to a final order of deportation[.]" *Zadvydas*, 533 U.S. at 693–694 (citing *Wong Wing v. United States*, 163 U.S. 228, 238, (1896)). *Zadvydas* "places the burden on the [noncitizen] to show, after a detention period of six months, that there is 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Pelich v. I.N.S.*, 329

F.3d 1057, 1059 (9th Cir. 2003) (quoting *Zadvydas*, 533 U.S. at 701). If the noncitizen meets this burden, then the respondents must "introduce evidence to refute that assertion." *Id.* (first citing *Zadvydas*, 533 U.S. at 701; and then citing *Xi v. I.N.S.*, 298 F.3d 832, 839–840 (9th Cir. 2002)); *see also Nadarajah v. Gonzales*, 443 F.3d 1069, 1082 (9th Cir. 2006) ("Given the unreasonable length of [petitioner's] detention, the unforeseeability of his removal, and the failure of the government to rebut his showing that there is no significant likelihood of removal in the reasonably foreseeable future, the government's continued detention violates federal law, as construed by the Supreme Court.").

Respondents do not put forth evidence showing they can remove Petitioner to Laos in the reasonably foreseeable future even if Petitioner's PFR is unsuccessful. Respondents have not provided any information about how, when, or if they will secure a new travel document. Thus, there is no evidence Respondents will obtain any such document in the near future as Respondents are currently prevented from taking further action until Petitioner's motion to stay before the Ninth Circuit is decided. *See* Order Entering Temporary Stay of Removal, *Manotham v. Blanche*, Case No. 26-4711, Dkt. No. 4 (9th Cir. Jul. 23, 2026); 9th Cir. Gen. 6.4(c) (March 30, 2026). While Petitioner is just shy of being detained for six months,[3] the Court finds Respondents have failed to rebut Petitioner's showing that there is no likelihood of removal in

---

[3] This date is quickly approaching. As of the date of this order, October 9, 2026, Petitioner has been detained for a total of 178 days between his initial detention from December 7, 2011 to March 6, 2012 and his re-detention from July 13, 2026 to the present. *See Sied v. Nielsen*, Case No. 17-CV-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018) (holding "the six-month period does not reset when the government detains [a noncitizen] under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again.").

the reasonably foreseeable future, given the lack of a valid travel document and temporary stay of deportation before the Ninth Circuit.[4]

Because there is not a significant likelihood of removal in the reasonably foreseeable future, Petitioner's detention is no longer permitted under *Zadvydas*. *See* 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Petitioner's current detention is unlawful, and release is the appropriate remedy. *See Yuksek v. Bondi*, Case No. 2:25-CV-02555-DGE-GJL, 2026 WL 60364 (W.D. Wash. Jan. 8, 2026) (allowing release upon a finding that removal was not reasonably foreseeable); *Douangdala v. Bondi*, Case No. 2:26-cv-00963-DGE, 2026 WL 1113383 (W.D. Wash. Apr. 24, 2026) (same).

## III. ORDER

The Court GRANTS Petitioner's petition for writ of habeas corpus. (Dkt. No. 1.) The Court ORDERS:

1. Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from custody within **<u>ONE (1) DAY</u>** of this Order.
2. Petitioner SHALL NOT be re-detained, absent urgent circumstances or a clear legal basis for detention, without first providing pre-deprivation notice and an opportunity to be heard in front of an immigration judge.

---

[4] The Ninth Circuit's stay of Petitioner's removal proceedings may not provide a basis to conclude that Petitioner's removal is not reasonably foreseeable. *See Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008). However, any uncertainty concerning when Petitioner's pending PFR and accompanying motion to stay will be ruled upon must be weighed against the lack of evidence that Petitioner can be removed once the stay is lifted. Here, there is no evidence of a valid travel document that would allow Petitioner's removal even if the stay is lifted.

3. Respondents shall return to Petitioner any personal property, including personal identification documents (other than a passport) and employment authorization documents (EADs).

4. Within **<u>TWENTY-FOUR (24) HOURS</u>** of this Order, Respondents SHALL provide the Court with a declaration confirming Petitioner has been released from custody and SHALL file a copy of the conditions of supervision.

Dated this 9th day of October, 2026.

David G. Estudillo
United States District Judge